UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MATTHEW C. RUDOLPH,

      Plaintiff,                    **Case No. 2:18-cv-1743**
                                          **JUDGE SARAH D. MORRISON**
  **v.**                            **Magistrate Judge Elizabeth Preston Deavers**

ALLSTATE INSURANCE COMPANY,

      Defendant.

## OPINION AND ORDER

This matter is before the Court upon Defendant Allstate Insurance Company's Motion for Partial Summary Judgment (ECF No. 36), Plaintiff Matthew C. Rudolph's Motion for Partial Summary Judgment (ECF No. 59), and Allstate's Cross Motion for Summary Judgment on Plaintiff's Motion for Partial Summary Judgment (ECF No. 61). All three motions are fully briefed and ripe for review. For the reasons stated herein, Allstate's Motion for Partial Summary Judgment is **GRANTED**, Plaintiff's Motion for Partial Summary Judgment is **DENIED**, and Allstate's Cross Motion for Summary Judgment is **GRANTED**.

## I.

This matter arises out of Allstate's decision to terminate the Allstate R3001S Exclusive Agency Agreement ("EA Agreement") it had with Mr. Rudolph and Allstate's subsequent decision not to approve Mr. Rudolph's proposed candidates as successors to the two agencies Mr. Rudolph operated at the time of his termination.

Mr. Rudolph began working for Allstate as a Licensed Sales Producer ("LSP") at his father's agency in 2009. (Rudolph Dep. at 32, ECF No. 36-2, Ex. B). In March 2013, Mr. Rudolph

purchased his father's agency and then later sold it. (*Id.*). Before he sold that agency, Mr. Rudolph purchased a second Allstate agency in Bexley, OH. Mr. Rudolph sold his Bexley agency in 2015. (*Id.* at 35). Mr. Rudolph opened two additional agencies, "South High" and "Georgesville" in 2014 and 2016, respectively. Mr. Rudolph owned and operated both of these agencies when his EA Agreement was terminated on May 10, 2018. (Termination Letter, ECF No. 36-2, Ex. G).

Each time Mr. Rudolph opened an agency, the parties executed a separate and distinct EA Agreement. (*See* EA Agreements, ECF No. 47, Exs. 1, 2).[1] Each EA Agreement fully incorporated the Allstate Supplement for the R30001 Agreement (the "Supplement"), the Exclusive Agency Independent Contractor Manual (the "Manual") and the Allstate Agency Standards. (EA Agreement at I.C). The EA Agreement gave Allstate the ability to terminate Mr. Rudolph, with or without cause, at any time. (*Id.* at XVII.B.2). Allstate was able to terminate Mr. Rudolph with cause, immediately upon providing written notice to him. (*Id.*). "For cause" termination was warranted by "breach of [the Agreement], fraud, forgery, misrepresentation, or conviction on crime." (*Id.*).

As an agency owner, Mr. Rudolph contracted with LSPs, who sell insurance policies at one of his agencies. The Manual dictates that agents, such as Mr. Rudolph, are "ultimately responsible for all sales and service activities of your LSP since he is acting under your direction or control. His representations will be attributed to you." (Independent Contractor Manual at PAGEID # 503, ECF No. 39, Ex. C). Agents were also required to ensure LSPs complied with "Company policies and procedures, including the Allstate Agency Standards, and all applicable laws and regulations relating to the conduct of business under the R3001 Agreement." (*Id.*).

---

[1] The EA Agreements for the Plaintiff's two agency locations are identical for all material purposes. While the Court will refer to the "EA Agreement" in its singular form, all references apply equally to both of Plaintiff's agency locations.

In late 2017 or early 2018, Allstate conducted an internal audit and subsequently began an investigation into Mr. Rudolph's agencies.  The investigation concluded that one of Mr. Rudolph's former LSPs, Kevin Palmer, had falsified prospective customers' information to secure business by obtaining better rates than would have been otherwise possible.  (Summary of Evidence Report at PAGEID # 368, ECF No. 36-2, Ex. D).  Mr. Rudolph was made aware of Palmer's practices of falsifying information in October or November of 2017.  (Rudolph Dep. at 10:14–11:2, ECF No. 36-2, Ex. A).  When Mr. Rudolph confronted Palmer, Palmer asked for forgiveness and assured Mr. Rudolph "it would never happen again."  (*Id.* at 14:2–12).  Mr. Rudolph did not fire Palmer and instead decided he would monitor him more closely.  (*Id.*).  However, the idiosyncrasies regarding the availability of reports from Allstate and Mr. Rudolph's retrospective failure to understand the reports that were available to him allowed Palmer to continue his practice of falsifying information—albeit to a lesser degree—largely undetected by Mr. Rudolph.  (*Id.* at 17:7–20:18).  Allstate had no reason to believe Mr. Rudolph instructed Palmer to engage in such conduct or that Mr. Rudolph knew of Palmer's conduct prior to the fall of 2017.  (Hawkes Dep. at 58, 62, ECF No. 36-2, Ex. F; Cantrell Dep. at 30, ECF No. 44).

During the course of Allstate's investigation, Palmer admitted to his conduct and acknowledged that he knew that he acted contrary to Allstate's internal policies.  (*Id.* at 8:21–10:17).  Ultimately, Allstate's Investigative Services recommended that Allstate terminate Mr. Rudolph's EA Agreements.  (Summary of Evidence Report at PAGEID # 368).  On May 10, 2018, Allstate notified Mr. Rudolph in writing that his EA Agreements were being immediately terminated for cause.  (Termination Letter, ECF No. 36-2, Ex. G).  The Termination Letter informed Mr. Rudolph that, pursuant to the terms of the EA Agreement, he could elect to find a buyer for each of his agencies or he could elect to receive a termination payment ("TPP") pursuant

to the terms set forth in the Supplement. (*Id.*). If Mr. Rudolph elected to find a buyer, the EA Agreement provides that Allstate maintains "the right in its exclusive judgment not to approve the transfer of interest." (EA Agreement at I.B). According to the Termination Letter, if Mr. Rudolph did not present a buyer or if the buyer he presented was not approved, Allstate would process the termination payment in accordance with the Supplement. (*Id.*). In fact, Mr. Rudolph presented Allstate with four potential buyers, but Allstate denied all four. Allstate also never paid Mr. Rudolph a TPP, arguing that neither of his agencies met the vesting requirements spelled out in the EA Agreement or its incorporated documents.

After terminating Mr. Rudolph, Allstate notified The Ohio Department of Insurance, License Division ("ODI") and the Financial Industry Regulatory Authority ("FINRA") about Mr. Rudolph's termination for cause and that he was no longer authorized to represent Allstate. Most relevant here, Allstate's letter to ODI stated that Rudolph had been fired for cause "due to falsification of documents[.]" (ODI Letter, ECF No. 36-2, Ex. H). Allstate's statement on its Form U5 filing to FINRA was more detailed, with the reason for termination being identified as: "failing to monitor insurance agency staff who were inaccurately completing Auto and Renters' insurance policies." (FINRA Filing at 2, ECF No. 36-2, Ex. I).

Mr. Rudolph initiated this action on November 13, 2018, in the Court of Common Pleas in Franklin County, Ohio, by filing a ten-count Complaint. (*See* ECF No. 1-1). Allstate subsequently removed the case to this Court on December 19, 2018. (Notice of Removal, ECF No. 1). On December 11, 2019, Mr. Rudolph voluntarily dismissed six (6) of his claims. (Not. of Dismissal, ECF No. 35). On March 24, 2020, Allstate moved for partial summary judgment on Mr. Rudolph's claims for breach of contract (Count II), defamation (Count IV), and breach of the implied

4

covenant of good faith and fair dealing (Count IX).[2]  After briefing had concluded on Allstate's Motion for Partial Summary Judgment, the Court extended the deadline for filing dispositive motions and Mr. Rudolph moved for Partial Summary Judgment "on the issue of whether Allstate breached the terms of the contract by failing to pay Rudolph a termination payment ("TPP") pursuant to the contract." (Pl.'s Mot. at 1, ECF No. 59).[3]  On April 24, 2020, Allstate filed its response and Cross Motion for Summary Judgment, focusing solely on Mr. Rudolph's new theory of recovery for breach of contract.  The parties concluded briefing on all issues presently before the Court on June 5, 2020.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party, who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to the party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in

---

[2] In his response (ECF No. 43), Rudolph withdrew his independent claim for breach of the implied covenant of good faith and fair dealing while maintaining an analogous claim as part of his breach of contract claim.  The docket contains no formal entry notating this voluntary dismissal.  Accordingly, summary judgment on Rudolph's independent claim for or breach of the implied covenant of good faith and fair dealing (Count IX) is hereby **GRANTED**.

[3] This theory of recovery appears to be novel in terms of this case, raised for the first time here and not pled in Plaintiff's Complaint.

his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts") (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Cond. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III.

Having disposed of Mr. Rudolph's withdrawn independent claim for breach of the duty of good faith and fair dealing (Count IX), the Court will first address Allstate's Motion for Partial Summary Judgment on Mr. Rudolph's claims for breach of contract (Count II) and defamation (Count IV). The Court will then conclude by addressing each party's Motion for Summary Judgment on the issue of whether Allstate breached the contract with Mr. Rudolph by refusing to pay him a TPP.

### A.     Breach of Contract/Implied Duty of Good Faith and Fair Dealing

In Count II of the Complaint, Mr. Rudolph alleges that Allstate failed to act in good faith when it refused to approve the candidates he recommended to purchase his economic interests. (Compl. ¶ 41, ECF No. 2). Allstate argues that the express terms of the EA Agreement granted Allstate the exclusive judgment not to approve the transfer of interest. Mr. Rudolph counters that Ohio follows the Restatement of Contracts so every contract implies a duty of good faith and fair

6

dealing, and that duty prohibits a party from acting "dishonestly, unfairly, and with subterfuge and evasions when one party is given discretion or exclusive authority in a contract." (Pl.'s Resp. at 7–8, ECF No. 43).

The relevant contract terms are as follows:

> Subject to the terms and conditions set forth in this Agreement and the incorporated Supplement and EA Manual, you may transfer your entire economic interest in the business written under this Agreement upon termination of this Agreement by selling the economic interest in the business to an approved buyer. The Company retains the right in its exclusive judgment to approve or disapprove such a transfer.

(EA Agreement at XVI.B ("TRANSFER OF INTEREST")). The Manual similarly outlines transfers of interest when Allstate terminates the EA Agreement immediately for cause, as was the case here: "You may elect to transfer your interest in the book of business serviced by your agency to an approved buyer . . . ." (Contractor Manual at 34). Agents are also advised that upon the termination of their agency relationship with Allstate, they "may sell [their] economic interest in the book of business serviced by your agency at any time provided the Company approves the buyer. The Company shall have the right to approve or disapprove the sale of the economic interest in the book at any time up until the transfer of the economic interest has occurred." (*Id.* at 36).

*DavCo. Acquisition Holding, Inc. v. Wendy's Int'l, Inc*, is instructive in the case at bar and provides a clear and concise overview of contract construction principles in Ohio. There, Judge Graham wrote:

> Construction of a written contract is a matter of law to be determined by the court. *Latina v. Woodpath Development Co*., 57 Ohio St.3d 212, 214, 567 N.E.2d 262 (1991); *Alexander v. Buckeye Pipe Line Co*., 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). As a general rule, contracts should be construed so as to give effect to the intention of the parties. *Aultman Hosp. Ass'n v. Community Mut. Ins. Co*., 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). In construing a contract, a court must give meaning to every paragraph, clause, phrase, and word, omitting nothing as meaningless, or surplusage and must consider the subject matter, nature, and purpose of the agreement. *Affiliated FM Insurance Co. v. Owens-Corning Fiberglas Corp*., 16 F.3d 684, 686 (6th Cir. 1994)(applying Ohio law). Where the terms of an existing contract are clear and unambiguous, the court cannot create a

> new contract by finding an intent not expressed in the clear and unambiguous language of the written contract. *Hamilton Insurance Services, Inc. v. Nationwide Insurance Cos.*, 86 Ohio St.3d 270, 273, 1999 Ohio 162, 714 N.E.2d 898 (1999). The court cannot make contracts for others and may not read language or terms into a contract. *Uram v. Uram*, 65 Ohio App.3d 96, 99, 582 N.E.2d 1060 (1989).

*DavCo. Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*, No. 2:07-cv-1064, 2008 WL 755283, at *3 (S.D. Ohio Mar. 18, 2008) (internal quotations omitted).  In Ohio, the implied duty of good faith and fair dealing is written into nearly every contract "and it applies where one party has discretionary authority to determine certain terms of the contract." *Id.*, at *6 (citing *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 2005-Ohio-4850, 839 N.E.2d 49, ¶ 25 (1st Dist.)).  However, as *DavCo* recognized, "the implied covenant of good faith and fair dealing does not apply where a party to the contract has the absolute and exclusive authority to make the decision at issue." *Id.*, at *7.  The Ohio Supreme Court similarly held "[w]e also clarify that a party to a contract does not breach the implied duty of good faith and fair dealing by seeking to enforce the agreement as written or by acting in accordance with its express terms[.]" *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 5 (2018).

In *Stephenson v. Allstate Ins. Co.*, the Sixth Circuit reviewed the same contract provision as in the case at bar and determined that

> [t]he plain language of the R3001 Agreement, that 'the company retains the right in its exclusive judgment to approve or disapprove such a transfer,' defines the reasonable expectations of the parties regarding the issue.  Because any decision concerning the transfer of accounts between agents rested *exclusively* with Allstate, the contract presumed no discretion and, thereby, removed any basis upon which to imply a covenant of good faith and fair dealing.

328 F.3d 822, 827 (6th Cir. 2003) (emphasis in original).[4]

---

[4] *Stephenson* applied Michigan law, but there are no differences between general contract principles employed by Michigan and Ohio law on this issue.

Mr. Rudolph argues that the implied duty trumps the explicit terms of his contracts, relying heavily on semantics. But whether the wording is "sole discretion," "exclusive judgment," or "exclusive right," is inconsequential; all of these terms reasonably reflect one party having a unilateral, exercisable right under the explicit, unambiguous terms of the contract.

In sum, the implied duty of good faith and fair dealing is written into most Ohio contracts, but it does not override the explicit terms of the contract. Ohio courts have long held the implied duty as a safeguard against one party taking opportunistic advantage of another party "in a way that could not have been contemplated at the time of drafting." *Ed Schory & Sons, Inc. v. Soc. Nat'l Bank*, 75 Ohio St.3d 433, 444, 662 N.E.2d 1074 (1996). There is no opportunistic advantage where an express, bargained-for term affords one party the right to take a specific action.

Mr. Rudolph fails to raise any genuine issues of material fact and summary judgment is hereby **GRANTED** in favor of Allstate on Plaintiff's claim for breach of contract (Count II).

## B.    Defamation

Mr. Rudolph alleges that "Allstate wrote letters to [ODI and FINRA] and publicly informed others in the insurance industry . . . that Rudolph had been terminated as an Allstate agent for acts, including 'falsification', which expressly or impliedly inferred that Rudolph's business behavior as an Allstate agent was criminal in nature and/or otherwise wrongful." (Compl. ¶ 51). In its Motion for Partial Summary Judgment, Allstate demonstrated an absence of genuine issue of material fact regarding Allstate's allegedly defamatory statements to FINRA and "others in the insurance industry." Mr. Rudolph did not address these two recipients of alleged defamation in its response. Therefore, Mr. Rudolph abandoned those claims by failing to set forth specific facts showing that there is a genuine issue for trial. Allstate's arguments on these two issues are well

taken. This leaves Allstate's statement to ODI as Mr. Rudolph's sole allegation on his defamation claim.

In order to succeed on a claim for defamation, a private individual in Ohio must show: "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Croce v. New York Times Co.*, 345 F. Supp. 3d 961, 973–74 (S.D. Ohio 2018) (Graham, J.), *aff'd,* 930 F.3d 787 (6th Cir. 2019) (citing *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77 (2012)).

"In Ohio, truth is a complete defense to a claim for defamation." *Ed Schory*, 75 Ohio St.3d at 445. The Sixth Circuit has acknowledged that Ohio has a "low threshold . . . for a finding of 'truth.'" *Susan B. Anthony List v. Driehaus*, 779 F.3d 628, 633 (6th Cir. 2015). "It is sufficient [in defending a defamation action] to show that the imputation is substantially true, or as it is often put, to justify the 'gist,' the 'sting,' or the substantial truth of the defamation." *Nat'l Medic Serv. Corp. v. E.W. Scripps Co.*, 61 Ohio App.3d 752, 755, 573 N.E.2d 1148 (1st Dist.1989) (quoting Prosser, Law of Torts (4 Ed.1971) 798–99). "Ohio courts ha[ve] defined a false statement as a statement that sets forth matters which are not true or statements without grounds in truth or fact. A statement is not a false statement if, even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it. Moreover, a statement that is subject to different interpretations is not false." *Id.* (internal quotations omitted) (citing *Serv. Emp. Int'l Union Dist. 1199 v. Ohio Elections Comm.*, 158 Ohio App.3d 769, 2004-Ohio-5662, 822 N.E.2d 424, ¶ 18 (10th Dist.)).

Mr. Rudolph argues that Allstate's statement to ODI was false in that "the reason given for Rudolph's agency termination was the act of 'falsification' by Rudolph." (Pl.'s Resp. at 7–8). While Allstate's chosen language was somewhat vague, potentially misleading, and omitted certain facts, a reasonable jury could only reach the conclusion that it is substantially true because Mr. Rudolph's termination was "due to falsification of documents." Allstate's chosen language is precisely that which Ohio courts have long held to be unactionable.

The Court may have reached a different conclusion had the statement read "Rudolph's agency agreement was terminated because *he* was falsifying documents." At the very least, it would require the Court to address the Manual's language that held Mr. Rudolph "ultimately responsible for all sales and service activities of your LSP since he is acting under your direction or control. His representations will be attributed to you." (Independent Contractor Manual at PAGEID # 503). However, under Ohio's "low threshold" for finding truth, this analysis is not necessary.

Mr. Rudolph has failed to raise a genuine issue of material fact as to the falsity of Allstate's statement to ODI. Because he has failed to establish all the elements of his defamation claim, the Court need not reach Allstate's qualified privilege and statutory immunity defenses. Accordingly, summary judgment is hereby **GRANTED** to Allstate on Plaintiff's defamation claim (Count IV).

## C.     Cross Motions for Summary Judgment on TPP Refusal

As mentioned above, each party filed a Motion for Partial Summary Judgment on the limited issue of whether Allstate breached its contract with Mr. Rudolph by refusing to pay him a TPP after his termination for cause. Mr. Rudolph contends that the Supplement, which was incorporated into each EA Agreement for each of his agencies, provided for three different methods of calculating the vesting requirements for TPPs: two of the methods are applicable to

agencies/locations, and one method applies to individual agents irrespective of their temporal affiliation with a single or multiple agencies.  Mr. Rudolph relies on the third method of TPP vesting because neither of the two agencies he represented at the time of his termination had been in existence long enough to vest under the two agency-based vesting methods.  Mr. Rudolph claims that he meets the TPP vesting requirements under the third method because he personally had been an Allstate agent for more than 5 years; that time beginning when he bought his first agency in 2013.  Allstate counters that despite using the word "agent" instead of "agency" at one point in the Supplement, the entirety of the Supplement and EA Agreement, including a table that further explains the vesting methods, unambiguously reflect an understanding between the parties that all three methods of calculating vesting requirements apply to agencies, as opposed to individual agents.

### 1.    Plaintiff's Motion for Partial Summary Judgment

The moving party shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  The problem with Mr. Rudolph's Motion for Partial Summary Judgment lies in the fact that he has pointed the Court to little or no record evidence to support his contentions.  Further, Mr. Rudolph did not plead this cause of action in his Complaint; the Complaint does not even mention "termination payment" or "TPP."

Even more problematic, throughout his Motion for Partial Summary Judgment, Mr. Rudolph refers to the Supplement, the keystone document essential to his unpled claim, as "Ex. 5."  However, Mr. Rudolph never filed the Supplement prior to, or contemporaneously with, his

Motion. Without the aid of allegations in a Complaint or the document upon which Mr. Rudolph's claim relies, the Court is wholly unable to ascertain whether Mr. Rudolph has met his initial burden of demonstrating an absence of a genuine issue of material fact. Because the Supplement contained confidential information and was subject to a valid protection order, the Court was not privy to the contents of the Supplement until Allstate submitted a motion to file the Supplement under seal as an exhibit to its cross motion for summary judgment. The Court cannot, however, retroactively consider the Supplement as evidence in support of Mr. Rudolph's Motion. The Court must examine each motion for summary judgment on its own merits. In addition, this Court requires that all evidence to support a motion be submitted contemporaneously with such motion. *See Prosser v. XTO Energy, Inc.*, No. 2:12-CV-0883, 2013 WL 1829590, at *2 (S.D. Ohio Apr. 30, 2013) (Frost, J.) (citing S.D. Ohio Civ. R. 7.2(d), stating that "When proof of facts not already of record is necessary to support . . . a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence."). For these reasons, Plaintiff's Motion for Partial Summary Judgment (ECF No. 59) is hereby **DENIED**.

### 2.    Allstate's Cross Motion for Partial Summary Judgment

In *Mulch Mfg., Inc. v. Advanced Polymer Solution, LLC*, Judge Sargus succinctly set forth the controlling law applicable to contract interpretation:

> In interpreting contractual language, the Court's purpose "is to ascertain and give effect to the intent of the parties." *Foster Wheeler Envirespose, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (Ohio 1997). The Court generally presumes that the intent of the parties rests within the language of the contract. *Id.* "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Id.* (internal quotations omitted).

> "[T]he interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th

Cir.2008) (applying Ohio law).  "[I]n cases where ambiguity exists, interpretation of the parties' intent is a question to be determined by the trier of fact." *Schafer v. Soderberg & Schafer*, 196 Ohio App.3d 458, 477, 964 N.E.2d 24 (Ohio Ct.App.2011) (internal quotations omitted).

"Contractual language is ambiguous only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia*, 151 Ohio App.3d 409, 414, 784 N.E.2d 186 (Ohio Ct.App.2003) (internal quotations omitted).  "[W]here a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 219, 797 N.E.2d 1256 (Ohio 2003).  "Such extrinsic evidence may include (1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement." *Covington*, 151 Ohio App.3d at 414, 784 N.E.2d 186.  Although the resolution of any ambiguity is a question of fact, if extrinsic evidence reveals only one reasonable interpretation, the Court may enter summary judgment.  *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 07–CV–01190, 2011 WL 5520954, at *5 (S.D. Ohio Nov. 14, 2011) (applying Ohio law).

The Supplement's language is not ambiguous.  When read in the context of the entirety of the Supplement, it is clear from the four corners of the document that all three methods of TPP vesting requirements apply to agencies, not agents personally.  The explanatory chart contained in the Supplement encapsulates all three methods and is titled "New Agency TPP Vesting Program." (Supplement at PAGEID# 1865, ECF No. 65).  Further, each of the columns in the chart is labeled as "New Agency Type."  (*Id.*).  If the Court were to adopt Mr. Rudolph's argument, both of these labels would be inconsistent with Allstate's single usage of the word "agent" instead of "agency" on the previous page of the Supplement.

There is further evidence that all methods of TPP vesting are tied to agencies rather than individual agents.  For instance, calculation of the TPP payment is based on the earned premiums and renewal commissions at a single location.  *(Id.)* at PAGEID # 1861.  Using this accounting method, it only makes sense that TPP is tied to a single agency.  Otherwise, agents could middle along at a relatively low-volume agency for 4 years and 360 days, acquire a new, better-performing

14

agency and almost immediately capitalize on the high-volume agency's TPP valuation.  Surely, this scenario was not intended by the parties.   This example is precisely the "manifest absurdity" that the Ohio Supreme Court warned against in *Foster Wheeler.*

In sum, affording its plain meaning to the single use of the word "agent" instead of "agency" in the Supplement would not give effect to the intent of the parties.   Accordingly, Defendant's Cross Motion for Summary Judgment (ECF No. 61) is **GRANTED**.

## IV.

For the reasons stated herein, Defendant's Motion for Partial Summary Judgment (ECF No. 36) is **GRANTED**, Plaintiff's Motion for Partial Summary Judgement (ECF No. 59) is **DENIED**, and Defendant's Cross Motion for Summary Judgment on Plaintiff's Motion for Partial Summary Judgment (ECF No. 61) is **GRANTED**.  Plaintiff's claim for Breach of Contract – Exclusive Agency Agreement (Count I) remains pending.

The Clerk shall **REMOVE** ECF Nos. 36, 59, and 61 from the Court's pending motions list.

**IT IS SO ORDERED.**

  8/6/2020                                                                    /s/ Sarah D. Morrison
DATE                                                        **SARAH D. MORRISON**
                                                            **UNITED STATES DISTRICT JUDGE**