## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

MATTHEW C. RUDOLPH,

       Plaintiff,

    v.

ALLSTATE INSURANCE COMPANY,

       Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

Case No. 2:18-cv-1743

Judge Sarah D. Morrison

Chief Magistrate Preston Deavers

## OPINION & ORDER

This matter is before the Court pursuant to several motions *in limine*. Each is described and addressed seriatim.

### I.    Standard of Review

A motion *in limine* is a pre-trial mechanism by which the Court can give the parties advance notice of the evidence upon which they may or may not rely to prove their theories of the case at trial. Although the Federal Rules of Evidence do not explicitly authorize a court to rule on an evidentiary motion in limine, the United States Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The motions therefore serve "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).

To obtain the *in limine* exclusion of evidence, a party must prove that the evidence is clearly inadmissible on all potential grounds. *Luce,* 469 U.S. at 41 n.4.

Any ruling on a motion *in limine*, however, is "no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court, and the district court may change its ruling where sufficient facts have developed that warrant the change." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). The Court will therefore entertain objections on individual proffers of evidence as they arise at trial, even though the proffered evidence falls within the scope of a denied motion *in limine*. *United States v. Kistner*, No. 2:11-cr-00283, 2013 U.S. Dist. LEXIS 2129, at *4-5 (S.D. Ohio Jan. 7, 2013).

## II.    Analysis

### A.  ECF No. 78: Rudolph's Motion to Bar Allstate From Arguing in the Alternative That it Would Have Fired Rudolph Without Cause.

Allstate's May 10, 2018 termination letter ("Letter") provides Rudolph is being fired "for reasons that include but are not limited to [his] agency providing false information to [Allstate]."  (ECF No. 78-1.) Because the Letter indicates Rudolph's termination is for cause, this motion seeks to bar Allstate from arguing in the alternative at trial that it fired Rudolph without cause. (ECF No. 78.)

Allstate responds that it will not present that alternative ground for Rudolph's termination at trial. (ECF No. 96.) The motion is therefore **MOOT**. (ECF No. 78.)

Because the motion asks only that Allstate be barred from arguing it did not need to have cause to terminate Rudolph, and that issue is moot, the Court need not examine Allstate's contentions regarding the effect of this ruling on damage

2

calculations. (ECF No. 96 at 3.) The parties are reminded that the pre-trial motion

deadline has passed; as such, no more motions will be entertained.

### B.  ECF No. 79: Rudolph's Motion as to Burden of Proof.

This motion focuses on the breach element of Rudolph's breach of contract

claim. Rudolph, as the party seeking to enforce a contract, has the burden to prove,

by a preponderance of the evidence, all of the elements for this claim. *Cooper &

Pachell v. Haslage* (2001), 142 Ohio App. 3d 704, 707. The elements are the

existence of a contract, performance by the plaintiff, breach by the defendant, and

damage or loss to the plaintiff. *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600.

Even if a valid contract is proven to exist, the defendant may raise an affirmative

defense; the burden of proving that affirmative defense is on the defendant.

*MatchMaker Internatl., Inc. v. Long* (1995), 100 Ohio App.3d 406, 408. The Ohio

Supreme Court defines affirmative defense as:

> a new matter which, assuming the complaint to be true,
> constitutes a defense to it. An affirmative defense is any
> defensive matter in the nature of  a confession and
> avoidance. It admits that the plaintiff has a claim (the
> 'confession') but asserts some legal reason why the
> plaintiff cannot have any recovery on that claim (the
> 'avoidance').

*State ex rel. Plain Dealer Publ'g Co. v. City of Cleveland*, 1996-Ohio-379, 75 Ohio St.

3d 31, 33, 661 N.E.2d 187, 189-90 (internal quotations and citations omitted).

Rudolph's present motion argues that he need only establish that Allstate

"issued the termination letter" to satisfy the breach element of his breach of

contract claim. (ECF No. 79 at 2.) In support, Rudolph cites to Allstate's Answer,

wherein it relevantly raises two affirmative defenses. First, Allstate avers Rudolph's breach count is "barred in whole or in part because [Rudolph] breached his EA Agreement." (ECF No. 79 at 1)(quoting ECF No. 4 at 25.) Second, Allstate pleads that the same claim is "barred in whole or in part because Allstate had a valid legal and business justification for it[s] conduct." (ECF No. 79 at 2)(quoting ECF No. 4 at 26.) So, Rudolph seeks an order stating that Allstate has the burden of proving it did have cause to terminate him. (ECF No. 79.)

Allstate disagrees, noting that Rudolph's Complaint avers "Allstate committed a material breach of the Agreements by its May 10, 2018 notice of termination because Rudolph's conduct did not provide a 'for cause' basis to terminate the EA Agreements." (ECF No. 97 citing ECF No. 1-1 ¶ 34.) As such, Allstate maintains that the burden of establishing cause is not an affirmative defense but rather an element of Rudolph's case that he must prove. (ECF No. 97.)

Allstate is correct for two reasons. First, Rudolph's Complaint clearly alleges that it was the issuance of the Letter without cause, not just the issuance of the Letter, that constitutes the breach. Allstate may not now change the basis for its breach claim after discovery has ended and dispositive motions have been decided. Second, the EA Agreement ("Agreement") explicitly allows for termination with and without cause. Hence, merely issuing the Letter does not amount to a breach. Rather, because Allstate is proceeding under the Agreements' cause provision, breach only occurs in this instance if Allstate lacked cause.

This conclusion is buttressed by the Supreme Court of Ohio's decision in *Hamilton Ins. Servs. v. Nationwide Ins. Cos.*, 1999-Ohio-162, 86 Ohio St. 3d 270, 273. Therein, the governing agreement between an insurance agency and insurance company stated it could be terminated "at any time with or without cause." *Id*. After the insurance company terminated its relationship with the agency, the agency sued, arguing the agreement only allowed termination with cause. After the agency received favorable results at the trial and appellate level, the Supreme Court of Ohio reversed. The court found that the agency's contention that the Agreement only allowed termination for cause was improper given the plain language of the agreement allowing for termination without cause. *Id*. 274. Thus, the court held that the insurance company did not breach the contract simply by terminating the agreement with the agency. *Id*.

Consequently, Rudolph's Pretrial Motion as to the Burden of Proof asking the Court to hold that Allstate has the burden of proof on the cause issue is **DENIED**. (ECF No. 83.) Rudolph bears the burden of establishing that Allstate lacked cause to issue the Letter by a preponderance of the evidence.

    **C. ECF No. 84: Allstate's Motion to Preclude Rudolph from Seeking Lost Profits and Limit his Damages Claim to his 2017 Bonus.**

The Agreement relevantly provides:

    B. This Agreement may be terminated:

        1. At any time by mutual agreement of the parties in writing;

5

          2. By either party, with or without cause, upon providing ninety (90) days prior written notice to the other, or such greater number of days as is required by law. Once written notice of termination has been given by either party, you will, immediately upon request of the Company, cease to act or to represent yourself in any way as an agent or representative of the Company, but you will receive compensation pursuant to Section XV. from the Company for the period up to and including the specified termination date; or

          3. Alternatively, by the Company, with cause, immediately upon providing written notice to you. Cause may include, but is not limited to, breach of this Agreement, fraud, forgery, misrepresentation or conviction of a crime. The list of examples of cause just stated shall not be construed to exclude any other possible ground as cause for termination.

(ECF No. 84-1 at 9.)  Hence, Allstate had the authority to terminate the Agreement at any time with cause or with 90 days-notice if without cause.  If the termination was without cause, Allstate would pay Rudolph according to the Agreement for the 90-day period following the notice of termination. If the termination was with cause, Allstate would cease paying Rudolph immediately.

       This motion focuses on what Rudolph's damages would have been for the 90-day period if Allstate terminated the Agreement without cause. Rudolph's initial disclosures listed the following damages: (1) Commission/Bonus owed: $398,000; (2) Loss of sale proceeds: $3 million to $5 million; (3) Loss of future compensation: $300,000 to $500,000 annually until retirement; (4) Defamation: TBD; and (5) Expenses: $250,000 to $300,000 related to office space and equipment. (ECF No. 84-1 at 235.) After the Court's summary judgment decision, Allstate asserts that

categories two and four are no longer available. Allstate concedes that category one remains viable in the amount specified but contends that categories three and five should be struck for failure to comport with Fed. R. Civ. P. 26.

As to compensation loss in category three, Allstate's relevant interrogatory and Rudolph's response states:

> 7. With respect to any and all damages (including attorneys' fees) that you seek, describe with specificity the types and amounts of damages and the manner in which you calculate such damages. Identify all documents that relate to such damages or upon which you have relied in calculating such damages.

> ANSWER: Plaintiff has retained an expert to identify all its damage amounts in the following categories: loss of future business and loss of value of the business. The attorney's fees and punitive damages are yet to be determined. Additional damages shall be determined by the trier of fact.

(ECF No. 84-1 at 240.) Allstate notes that Rudolph never hired an expert. Allstate also requested that Rudolph produce "[a]ll documents that relate to, evidence, or refer to the damages you are seeking in this action." (ECF No. 84-1 at 246.) His response? "See attached tax documents. Allstate is in possession of the remainder of responsive documents." *Id*. Allstate proclaims Rudolph failed to produce those tax documents and to explain how those papers were relevant to the issue of damages. Rudolph testified that he had not made any attempt to quantify his lost income for the 90-day period. (ECF No. 84-1 at PAGEID 2679-80.) He said it would not be difficult to do so, as he would simply "look at the three months prior. You know, [it] would have been essentially the same." *Id*.

7

The following exchange regarding expenses for category five took place at

Rudolph's deposition:

> Q: Well, I want to know where your head is, which is that
> if you had remained there for that 90 days, you wouldn't
> have put in your pocket everything Allstate paid you; you
> would have continued to have expenses for that 90 days?
>
> A. I don't know that I would have continued to have. I
> mean, I'd have had the expenses of the leases, of course,
> but we still would have terminated the LSPs, so the
> expenses would have been drastically less. And we
> wouldn't have been doing the marketing during that time,
> so two-thirds of the expenses would have been gone
> immediately. So it would have been a pretty significant
> amount, probably 600,000, close to it.

(ECF No. 84-1 at PAGEID 2680.)

Finding the above insufficient, Allstate's counsel contacted Rudolph's counsel

seeking additional damages information. Rudolph's attorney responded that

Rudolph's "measure of damages are fees, expenses, emotion[al] distress, loss of

reputation, loss of business opportunity—sale price (offers made by potential

buyers), fair market value, or contractual value of business." (ECF No. 84-1 at 267.)

Allstate did not find this description adequate. So, it sent Rudolph's attorney

another letter requesting a specific damages computation. Allstate did not receive a

response but did not file a motion to compel.

Allstate now asserts Rudolph has failed to identify his expenses and loss of

income with particularity as Fed. R. Civ. P. 26(a)(1)(A)(iii) requires. (ECF No. 84 at

4.) Allstate therefore seeks exclusion of related evidence and testimony under Fed.

R. Civ. P. 37(c)(1). (ECF No. 84 at 8.) Rule 26(a)(1)(A)(iii) governs disclosures required "without awaiting a discovery request" with respect to damages:

> ****
>
> (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

The rule requires a party seeking damages "to disclose the best information then available to it concerning that claim, however limited and potentially changing it may be." *Hesco Parts, LLC v. Ford Motor Co.*, No. 3:02-CV-736-S, 2007 WL 2407255, at *1 (W.D. Ky. Aug. 20, 2007) (internal quotations and citation omitted). Rule 26 is the "functional equivalent of a standing Request for Production under Rule 34." *Bridgestone Am., Inc. v. Int'l Bus. Mach. Corp.*, No. 3:13-CV-1196, 2016 WL 3211226, at *3 (M.D. Tenn. Jan. 12, 2016) (quotations and citation omitted). "The documentation and evidence required by Rule 26 must be sufficient to allow the opposing party to independently analyze the claim." *Champion Foodservice, LLC v. Vista Food Exch., Inc.*, No. 1:13-cv-1195, 2016 U.S. Dist. LEXIS 112980, at *12-15 (N.D. Ohio Aug. 23, 2016) (quotations and citation omitted.)

Under Rule 37, failure to comply with Rule 26(a) requires a court to preclude use of the inadequately detailed damages at trial "unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer*, 596 F.3d 357, 370 (6th Cir. 2010). Here, Rudolph maintains the burden of

9

establishing a reasonable explanation or harmlessness. *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010). When determining whether Rudolph's alleged insufficient disclosure is "substantially justified" or "harmless," the Court considers the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015).

Rudolph implicitly admits that his disclosures relative to the categorized damages were insufficiently detailed under Rule 26. But he contends that deficiency does not necessitate exclusion under Rule 37 because it was harmless. Specifically, Rudolph, apparently for the first time, indicates that he will be relying upon a document Allstate created in September 2018 entitled "2018 EA Opportunity Tool v. 2.2" ("Tool") to prove his damages. (ECF No. 91-1 at 1.) According to Rudolph, the Tool, which was prepared after his initial disclosures, indicates that the average net income for the next five years was between $300,000 and $500,000, which was the amount he reported in his Rule 26(a) disclosures. (ECF No. 91 at 6.) These figures are based on income and expenses, and Rudolph agrees with Allstate's computations. (ECF No. 91 at 6.) Thus, he argues that these figures equate to a "reasonable computation" of his expenses and loss of income.

The Court concurs with Rudolph that there is no surprise, as Allstate itself prepared the Tool. Cure is inapplicable, but to the extent that it is necessary,

Rudolph agreed to be re-deposed via Zoom. Allstate declined the offer. Allowing the evidence would not disrupt the trial because Allstate created the Tool. The evidence is vitally important, as it goes to a required element of Rudolph's sole remaining claim for breach of contract. Lastly, Rudolph is not the non-disclosing party, as Allstate produced the Tool to him. So, Rudolph had no duty to supplement his disclosures with a document Allstate produced.

The five *Howe* factors indicate that Rudolph's lack of specificity was harmless. Accordingly, Allstate's Motion to Preclude Rudolph from Seeking Lost Profits and Limit his Damages Claim to his 2017 Bonus is **DENIED**. (ECF No. 84.)

While reaching this holding, the Court is compelled to comment that a short response from Rudolph's counsel to Allstate's counsel's request for specified damages indicating that Rudolph did not plan to use an expert and instead would solely rely on the Tool for damage calculations would have negated the need for this motion, ensuing briefing, related costs and Court consideration. Rudolph's counsel would serve its clients and the Court well by directly communicating with opposing counsel in the future.

### D. ECF No. 85: Allstate's Motion to Preclude Testimony About Allstate's Decisions to Terminate its Relationships with Other Agents.

As the title implies, Allstate moves the Court for an Order excluding evidence about its decision to terminate its relationships with other agents around the time it terminated Rudolph's contract. Noting that Rudolph's Complaint alleges that Allstate terminated the Agreements because he, and the other fired agents,

benefited from a commission structure that Allstate felt was too high, Allstate wants any evidence on this theory excluded as hearsay, irrelevant, unduly prejudicial and confusing. (ECF No. 85.)

Rudolph counters that he has "first-hand" knowledge of this allegation, so no hearsay is involved. (ECF No. 90.) As to relevance, Rudolph argues that Allstate's initial investigative reports for each of the agents at issue found "insufficient evidence to fire." (ECF No. 90 at 2.) According to Rudolph, that each of the agents was still fired can show the jury "an alternative reason" for the terminations. (ECF No. 90 at 2.) Rudolph does not address Allstate's undue prejudice and confusion contention. (ECF No. 90.)

Allstate's motion is **DENIED**. (ECF No. 85.) These issues are better suited for determination within the context of trial.

### E.  ECF No. 86: Allstate's Motion to Preclude Rudolph from Presenting Evidence on Issues and Claims Dismissed on Summary Judgment.

The Court's August 6, 2020 Opinion and Order granted summary judgment to Allstate on Rudolph's counts for breach of contract (purchase of Rudolph's interest); defamation; breach of the implied covenant of good faith and fair dealing; and the termination payment "claim" ("TPP") that Rudolph attempted to raise for the first time in the summary judgment filings. (ECF No. 72.) Allstate seeks to prevent introduction of all evidence related to those claims on grounds of relevance, admissibility and undue prejudice or confusion because the underlying facts for those claims occurred after Allstate's decision to terminate the Agreement and

therefore have no relation to whether Allstate had cause to do so. Specifically,

Allstate seeks exclusion of the following categories of evidence:

1. Allstate's process for approving candidates to purchase an agent's "book" or economic interest;
2. The value of Plaintiff's book at the time of termination;
3. Allstate's decision not to approve any of the candidates Plaintiff put forth to purchase his economic interest;
4. Allstate's policy regarding TPP and Plaintiff's eligibility to receive TPP;
5. Allstate's decision to withhold Plaintiff's TPP, in accordance with the terms of the EA Agreement;
6. Allstate's communication to regulatory agencies regarding Plaintiff's termination;
7. Allstate's alleged statements to other people in the community and the insurance industry regarding Plaintiff's termination or the reason for his termination; and
8. Any other facts relating to claims dismissed on summary judgment.

(ECF No. 86 at 6.)

Rudolph does not oppose the exclusion of topics covered under one, three, and five through seven. (ECF No. 92 at 2.) Hence, Allstate's motion as to those categories is **GRANTED**. (ECF No. 86.)

Rudolph opposes preclusion of evidence associated with groups two and four. For those categories,  Rudolph asserts that TPP is relevant to his remaining breach of contract count because if Allstate lacked cause to terminate the Agreement, the Agencies would have remained open long enough for him to become eligible for the TPP and able to choose to whom he sold his book of business. (ECF No. 92 at 2.) The Court agrees with Rudolph that such evidence may have relevance for the reasons he states and therefore **DENIES** Allstate's motion as to categories two and four. (ECF No. 86.)

Rudolph also opposes exclusion of "any other facts relating to claims dismissed on summary judgment" found in category eight. Rudolph argues that item "is vague and not specific enough to be of any exclusionary value." (ECF No. 92 at 1.) The Court finds category eight to be overly broad and more properly addressed within the context of trial. This portion of Allstate's motion is **DENIED**.

In sum, the Court **GRANTS** Allstate's Motion to Preclude Rudolph from Presenting Evidence on Issues and Claims Dismissed in Summary Judgment as to categories one, three, and five through seven. The Court **DENIES** the motion as to categories two, four and eight. (ECF No. 86.)

### III. CONCLUSION

ECF No. 78 is **MOOT**.

ECF No. 79 is **DENIED**.

ECF No. 84 is **DENIED**.

ECF No. 85 is **DENIED**.

ECF No. 86 is **GRANTED** in part and **DENIED** in part as delineated above.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**